**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

**JACKIE LYNN EKES,**

        **Plaintiff,**        17-CV-0122Sr

v.

**NANCY A. BERRYHILL,
Commissioner of Social Security,**

        **Defendant.**

---

## DECISION AND ORDER

    As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #19.

    Plaintiff filed an application for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), alleging disability since April 8, 2007 due to carpel tunnel, disc deterioration disease, PTSD, anxiety/depression, fibromyalgia and endometriosis. Dkt. 9, p.116 . A hearing was held before Administrative Law Judge ("ALJ"), Robert Harvey on May 20, 2015, at which plaintiff and an impartial vocational expert ("VE"), Esperanza Distefano, appeared and testified. Dkt. #9, pp.84-115. Plaintiff was represented by counsel. The ALJ rendered a determination that plaintiff was not disabled on June 17, 2015. Dkt. #9, p.23. The Appeals Council denied plaintiff's request for review on December 13, 2016. Dkt. #9 p.5.

Plaintiff commenced this action seeking review of the Commissioner of Social Security's ("Commissioner's"), final decision on February 10, 2017. Dkt. #1. Currently before the Court is plaintiff's motion for judgment on the pleadings (Dkt. #15), and defendant's motion for judgment on the pleadings. Dkt. #17.

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of

the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her application date of January 15, 2013; (2) plaintiff's left eye vision deficits, lumbago, cervicalgia, post-traumatic stress disorder, anxiety and depressive disorder constituted severe impairments but her claims of carpal tunnel syndrome, asthma and left hearing loss did not rise to the level of a severe impairment; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained

the capacity to perform light work, with an expansive list of additional limitations;[1] and (5) plaintiff could work as an electrical equipment assembler, assembler of small products or office helper. Dkt. #9, pp.28-40.

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence and that the ALJ failed to develop the record regarding plaintiff's visual acuity and the impact of her visual limitations on her ability to engage in substantial gainful employment. Dkt. #15-1, pp.18-20.

The Commissioner argues that the ALJ properly assessed plaintiff's allegations of pain and Dr. Liu's findings with respect to plaintiff's limitation in vision. Dkt. #17-1, pp.14-18. Moreover, the Commissioner argues that there is no suggestion by plaintiff of any gaps in the treatment records available to the ALJ. Dkt. #17-1, pp.18-20. The Commissioner asserts that the ALJ properly assessed both the medical evidence and plaintiff's evidence of her activities of daily living in determining her RFC. Dkt. #17-1, p.19.

---

[1] The ALJ determined that plaintiff "has the residual functional capacity to perform light work . . . except the [plainitff] cannot work in areas with unprotected heights; cannot work around heavy, moving or dangerous machinery; occasional (very little to 1/3rd of the time) limitations in: bending, climbing, stooping, squatting, kneeling and crawling; occasional (very little to 1/3rd of the time) limitation in overhead reaching; no climbing ropes, ladders or scaffolds; occasional (very little to 1/3rd of the time) limitation in pushing and/or pulling with the upper extremities; occasional (very little to 1/3rd of the time) limitations in ability to" understand, remember and carryout [sic] detailed instructions; maintain attention and concentration for extended periods; and dealing with stress; occasional (very little to 1/3rd of the time) limitation with near/far acuity, depth perception, peripheral vision; cannot work in areas where she would be exposed to dampness; and the claimant retains the ability to perform the basic mental demands of unskilled work including the ability to: understand, remember and carry out simple instructions; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in routine work settings." Dkt. #9, p.31.

The ALJ's determination that plaintiff had the exertional capacity to perform light work, with additional limitations, is supported by substantial evidence. Dr. Bagwell's diagnosis of chronic low back pain with sciatica, with a restriction for heavy lifting or prolonged standing (Dkt. #9, p.335), is compatible with the ALJ's RFC, and the ALJ was not required to adopt his opinion that such a restriction rendered plaintiff totally unable to work. *See Wright v. Berryhill*, 687 Fed. App'x 45, (2nd Cir. 2017) ("the legal determination of whether an individual is eligible to receive disability insurance benefits is reserved to the Commissioner."), *citing Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (ultimate finding of whether a claimant is disabled and cannot work is reserved to the Commissioner). Subsequent medical opinion from Dr. Brown restricting plaintiff from lifting more than 25 pounds is also consistent with the ALJ's RFC. Dkt. #9, p.337. Moreover, the consulting medical examiner, Dr. Liu, while observing indications of chronic neck and low back pain, determined that her examination supported only mild to moderate limitations for prolonged walking, bending, kneeling and overhead reaching. Dkt. #9, p.355. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013).

The ALJ's assessment of plaintiff's credibility is also supported by the record. While the medical evidence revealed degenerative changes of the cervical and lumbar spine, and examination revealed limitations in plaintiff's range of motion and/or tenderness in her neck and back, recommended treatment was conservative, including

chiropractic care and physical therapy to treat plaintiff's symptoms. Dkt. #9, pp. 362, 377, 423, 424 & 427. Although plaintiff consistently rated her pain as 10/10 (Dkt. #9, pp.102, 353, 388, 390, 417, 420), she was never observed by any medical provider to be in any acute distress nor was she ever prescribed any pain medication other than Tylenol or Advil. Dkt. #9, pp. 102-103, 354, 374, 391. Furthermore, plaintiff testified at her hearing that she was able to clean, cook, do dishes, laundry, vacuum, sweep, mop, take out the trash, bathe and dress herself, drive a car and shop. Dkt. #9, pp.98-99. Plaintiff informed the SSA that she was able to shower, prepare simple meals, clean her house, do laundry, drive a car and go shopping. Dkt. #9, pp. 241-244. Plaintiff informed the consulting psychologist and medical examiner that she is able to cook, clean, do laundry, go grocery shipping, shower and dress herself and drive. Dkt. #9, pp.350 & 354. Thus, plaintiff's report of her activities of daily living support the ALJ's determination that plaintiff was capable of performing light work.

The ALJ's determination that plaintiff's visual limitations would not preclude her from engaging in substantial gainful employment is supported by substantial evidence. Although the medical record reveals that plaintiff's corrected left eye vision is only 20/200, plaintiff's right eye corrected vision was 20/20 and her bilateral corrected visual acuity was 20/20. Dkt. #9, p.354. As a result, Dr. Liu opined that plaintiff would have a mild to moderate limitation for any activity requiring accurate visual acuity. Dkt. #9, p.356. The ALJ appropriately accounted for plaintiff's monocular vision when restricting plaintiff from occupational environments with unprotected heights, moving machinery and climbing ladders and scaffolds. Dkt. #9, p.31. In

addition, the ALJ explicitly asked the VE to take into consideration plaintiff's limitations in near and far acuity, depth perception and peripheral vision in proffering her opinion as to specific jobs plaintiff would be able to perform. Dkt. #9, pp. 111-112. The VE was aware of plaintiff's condition by virtue of her review of the record and presence by teleconference during plaintiff's testimony at the hearing that she had a "blind spot" in her left eye, which required her to wear glasses when she read and at night, but did not prevent her from driving a car, reading a computer screen and putting together a puzzle.[2] Dkt. #9, pp.95, 99, 107 & 108.

The ALJ's determination that plaintiff's depression, anxiety and post-traumatic stress disorder would not preclude her from engaging in unskilled work is supported by substantial evidence. Plaintiff's treating physician prescribed an anti-depressant and a referral for therapy. Dkt. #9, pp.364, 366, 370. While recognizing plaintiff's symptoms, Dr. Ippolito determined that they did not rise to a level which would interfere with plaintiff's ability to function on a daily basis. Dkt. #9, p. 351.

Finally, although plaintiff argues that the ALJ should have developed the record regarding plaintiff's vision, there is no suggestion that there was anything further to discern regarding plaintiff's monocular vision. Plaintiff did not identify this condition as a basis for her claim of disability, nor did plaintiff suggest that it affected her ability to

---

[2] Consistent with this testimony, plaintiff informed the consulting psychologist and medical examiner that she drove and that her hobbies include reading and informed the SSA that she read as a hobby. Dkt. #9, pp.99, 107, 108, 244, 350 & 354.

engage in activities of daily living. The consultative examination set forth plaintiff's visual limitations in her left eye, as well as her normal bilateral vision, and the ALJ accounted for this limitation in his RFC.. Dkt. #9, p.354. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Riley v. Colvin*, 211 F. Supp.3d 638, 651 (S.D.N.Y. 2016), *quoting Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1996).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #15), is **DENIED**, and the Commissioner's motion for judgment on the pleadings (Dkt. #17), is **GRANTED.**

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** Buffalo, New York
January 9, 2019

                                     *s/ H. Kenneth Schroeder, Jr.*
                                     **H. KENNETH SCHROEDER, JR.**
                                     **United States Magistrate Judge**